## James Melody et al. *v.* Zoning Board of Appeals of the Town of Glastonbury

King, C. J., Alcorn, House, Cotter and Thim, Js.

Argued October 14—decided November 25, 1969

*Edward C. Wynne,* for the appellant (defendant).

*Richard T. Scully,* for the appellees (plaintiffs).

COTTER, J. This appeal by the defendant is taken from a judgment of the Court of Common Pleas which overruled the defendant zoning board of appeals and ordered the issuance of a building permit by the building inspector of the town of Glastonbury to the plaintiffs for the construction of a motor vehicle service station. The property which is the subject matter of this action has been used as a gasoline filling station and for motor vehicle sales and repairs since 1927. In 1949, new zoning regulations were adopted by the town which placed the property in question in a general business zone. Later, in 1967, the plaintiffs, wishing to replace the present building, made application to the building inspector of the town for a building permit to construct a new structure. The building inspector denied the application on the ground that "the new filling station would constitute an enlargement or extension of a non-conforming use." The plaintiffs appealed from this adverse ruling to the defendant zoning board of appeals, which upheld the building inspector's ruling. They then took an appeal to the Court of Common Pleas, which overruled the board.

The court made no limited finding, as it should have, setting forth its conclusions as to the issues which the defendant desired to have reviewed. The conclusions which are attacked appear only in the memorandum of decision. The defendant has assigned as error the conclusions in that memorandum. The parties have briefed and argued the errors assigned in these conclusions, and we have decided to consider the issues. *Faubel* v. *Zoning*

*Commission,* 154 Conn. 202, 204, 224 A.2d 538; *Bright* v. *Zoning Board of Appeals,* 149 Conn. 698, 704, 183 A.2d 603.

The vital question, the answer to which is dispositive of this appeal to this court, is whether the plaintiffs' property, under the zoning regulations, is a nonconforming use as decided by the building inspector and the defendant zoning board of appeals. Historically, when new zoning regulations were adopted by the town in 1949, the property of the plaintiffs was placed in a general business zone pursuant to article 3 § 6, entitled "General Business Zone," which included among the permitted uses (1) those "permitted in neighborhood business zone" and (2) "[s]torage, repair, sales and service of automobiles and farm equipment as carried on at the adoption of these regulations." Under the regulations at that time, the plaintiffs' property was in a zone in which the business conducted by them became a permitted use. *Dostmann* v. *Zoning Board of Appeals,* 143 Conn. 297, 302, 122 A.2d 19.

Thereafter, in 1952, the town again amended the regulations to provide that a garage or a service or gasoline station as described therein would become "an additional permitted use" in its neighborhood business zone[1] and made the issuance of the permit

---

[1] "[Glastonbury Zoning Regs. (1952)]. Article III, Section 5, Neighborhood Business Zone. A.—Permitted uses: The following shall be an additional permitted use: subject to Article 5, Section 3. A garage for storage of more than five motor vehicles or a motor vehicle service station or gas filling station when permitted by the Zoning Board of Appeals, after a public hearing, and subject to appropriate safeguards in harmony with these regulations. No such permit shall be issued unless the Board makes a written finding that the proposed use (a) Will not create or increase a traffic or fire hazard. (b) Will not tend to depreciate the value of property in the neighborhood of its residences or alter the neighborhood's essential characteristics."

subject to certain distance requirements. Under the zoning regulations in effect at the time of the application and hearing, gasoline service stations were permitted under special exceptions granted by the zoning board of appeals subject to various distance limitations including a 1000-foot distance requirement from other gasoline service stations. Glastonbury Zoning Regs. § 3.8.7 (1965). As of the date of the application and hearing, there were other gasoline service stations within the distance limitations.

In the determination whether a particular use is permitted or nonconforming, the question is one of expressed intent as stated in the zoning regulations, which are basically legislative enactments, and such intent must be found from the intent expressed in the regulations construed as a whole. *Garbaty* v. *Norwalk Jewish Center, Inc.,* 148 Conn. 376, 381, 382, 171 A.2d 197; 101 C.J.S., Zoning, § 148. A permitted use is not a nonconforming use. *County of Saunders* v. *Moore,* 182 Neb. 377, 378, 155 N.W.2d 317; 101 C.J.S. 936 n.70, Zoning, § 180. A nonconforming use is merely an "existing use" the continuance of which is authorized by the zoning regulations. See General Statutes (Rev. to 1968) § 8-2. The regulations specifically and particularly define a nonconforming use as follows: "A use of land, building or premises which is not a use permitted by the provisions of these Regulations for the zone in which such land, building or premises is situated." Glastonbury Zoning Regs. § 2.14.a (1965).

In the determination whether the classification of the plaintiffs' property falls into that of a permitted use, the following regulations in effect at the time of the hearing before the board are relevant. Section 3 lists the uses permitted in different zones:

Section 3.9, entitled "General Business Zone GB—Permitted Uses," deals specifically with the zone in which the plaintiffs' property is located; § 3.9.3 permits business uses permitted in neighborhood business zones in a general business zone; § 3.8, entitled "Neighborhood Business Zone NB—Permitted Uses," lists, inter alia, the following types of business in § 3.8.8: "Storage, repair, sales and service of motor vehicles and farm equipment existing on the effective date of this Regulation"; § 3.8.7 has already been noted above. The plaintiffs have used their property for repair, sales and service of motor vehicles since 1927 so that, under § 3.8.8, their use was existing on the effective date of § 3.8.8 and is not a "use of land . . . which is not . . . permitted by the provisions of these Regulations" as defined in § 2.14.a and cannot be a nonconforming use within the meaning of the regulations.

Under §§ 3.8.8 and 3.9.3, the plaintiffs explicitly have a permitted use so long as it can be described as the use "existing on the effective date of this Regulation." The term "existing use" is usually employed by legal authorities with relation to the concept of nonconforming use so that, in this frame of reference, the phrase is related in point of time to the use which existed at the time of the enactment of the zoning regulation prohibiting such uses. *DeFelice* v. *Zoning Board of Appeals*, 130 Conn. 156, 32 A.2d 635; *Haller Baking Co.'s Appeal*, 295 Pa. 257, 145 A. 77. In the *DeFelice* case (p. 161), we have stated, in defining the words "existing use," that we mean a utilization of the property so that it may be known in the neighborhood as being employed for a given purpose; that neither the extent nor the quantity nor the quality of the use which may be permitted to continue is prescribed by those

words; and that it is only required that the use must have existed. The court is not generally required to speculate as to the number of acts or business transactions necessary to constitute an existing use. See also 101 C.J.S., Zoning, § 184. Although the defendant in its brief goes into great detail concerning the square footage of the plaintiffs' present and proposed new buildings, the number of lifts and bays currently existing and planned and the size of new oil and gasoline tanks, it is not disputed that, even after the proposed improvements, the plaintiffs' property will continue to be used for the same purposes as it was used in 1949 and earlier.

The defendant agrees that the plaintiffs' premises are presently in a general business zone. It argues, however, that the plaintiffs' station cannot satisfy the distance requirements of § 3.8.7, even though the other gasoline stations within the distance limitation "were constructed after the plaintiffs'," and that therefore "their use of the premises in question can only be a nonconforming one." To reach this conclusion we would have to ignore completely § 3.8.8. The plaintiffs' property falls squarely within the latter section, which does not contain any distance limitations. It is a standard rule of construction that, "whenever feasible, the language of an ordinance will be construed so that no clause is held superfluous, void or insignificant." *Planning & Zoning Commission* v. *Synanon Foundation, Inc.,* 153 Conn. 305, 309, 216 A.2d 442. Further, zoning regulations are in derogation of common-law rights and should not be extended by implication. *Park Construction Co.* v. *Planning & Zoning Board of Appeals,* 142 Conn. 30, 35, 110 A.2d 614. "[E]very owner of property located in a town which has adopted zoning is entitled to ascertain, with reason-

able certainty, what uses he may legally make of any portion of his property." *Lebanon* v. *Woods*, 153 Conn. 182, 191, 215 A.2d 112. The defendant was in error in refusing to issue a building permit to the plaintiffs for the reason "that the new filling station would constitute an enlargement or extension of a non-conforming use."

Additional support for this view is derived from the fact that at least since 1949 the Glastonbury regulations have made express provision for the continuance of nonconforming uses. See art. 5 (1949); § 5 (1965). By expressly permitting the "[s]torage, repair, sales and service of motor vehicles and farm equipment existing on the effective date of this Regulation" under § 3.8.8, the local legislative body must have intended to give to such a business the status of a permitted use rather than that of a nonconforming one.

There is no error.

In this opinion KING, C. J., and THIM, J., concurred; ALCORN and HOUSE, Js., concurred in the result.