[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION FACTS
The plaintiff is the owner of property located at 471 Riverside Avenue in Westport, Connecticut. (ROR #4). The property is located within a Residence A District. (ROR #'s 26, 29).
The Westport Planning and Zoning Commission, pursuant to Resolution #85-144, granted a special permit to the plaintiff in October 24, 1985 which allowed the operation of a non-commercial CT Page 3532 boat club on the plaintiff's property. (ROR #9). This special 11 permit was issued subject to the condition that no "boat or engine maintenance or repair shall occur on site." (ROR #9).
On April 30, 1990, the plaintiff applied to the Planning and Zoning Commission for a modification to the special permit, in order that the plaintiff might be allowed to perform maintenance and repair on the property. (ROR #34, p. 13).
Following the Commission's denial of the application, for modification of the permit, the Planning and Zoning Office investigated complaints that the plaintiff was violating the terms of his special permit by operating a commercial business and by performing maintenance and repair at his property. (ROR, pp. 1314).
On April 15, 1991, the Westport Zoning Enforcement Officer issued a cease and desist order to the plaintiff, on the ground that the plaintiff violated the conditions of the special permit by performing "boat or engine maintenance or repair" and by operating a commercial boat club on his property. (ROR #34, p. 13). The cease and desist order states that the plaintiff is "prohibited from running a commercial operation and cannot maintain or repair the boats and their engines." (ROR #34, p. 13).
On June 11, 1991, at a hearing of the defendant Westport Zoning Board of Appeals (hereinafter "Board"), the Board denied the plaintiff's appeal of the cease and desist order. (ROR #2). The plaintiff appeals this action.
JURISDICTION
In order to take advantage of a statutory right to appeal from an administrative agency, there must be strict compliance with the statutory provisions which created that right. Simko v. Zoning Board of Appeals, 206 Conn. 374, 377, 538 A.2d 202 (1988). These provisions are mandatory and jurisdictional; failure to comply subjects the appeal to dismissal. Id.
Aggrievement ------------
"General Statutes 8-8 and 8-9 permit appeals from a decision of a . . . zoning commission only by one `aggrieved' by a contested decision." Primerica v. Planning and Zoning Commission,211 Conn. 85, 92, 558 A.2d 646 (1989). At the hearing the court, Ryan, J., found that the plaintiff to be aggrieved by the Board's decision.
Timeliness ---------- CT Page 3533
 [A]ny person aggrieved by any decision of a board may take an appeal to the superior court for the judicial district in which the municipality is located. The appeal shall be commenced by service of process [upon the chairman or clerk of the board and on the clerk of the municipality] within fifteen days from the date that notice of the decision was published. . .
General Statutes 8-8 (b).
Notice of the Board's decision was published on June 21, 1991. (ROR #2). Service of process on William L. Scheffler, Chairman of the Westport Zoning Board of Appeals and Georgette E. Higgs, Westport Assistant Town Clerk was made on June 26, 1991. (Sheriff's Return). Hence, it is found that the plaintiff's appeal is timely.
"[Zoning b]oards of appeal are necessarily entrusted with the function of deciding, within prescribed limits and consistent with the exercise of a legal discretion, whether a regulation applies to a given situation, and the manner of its application. . . .In discharging this responsibility, a board is endowed with a liberal discretion, and its action is subject to review by the courts only to determine whether it was unreasonable, arbitrary or illegal." Connecticut Sand and Stone Corporation v. Zoning Board of Appeals,150 Conn. 439, 442, 190 A.2d 594 (1963). "Courts must not substitute their judgment for that of the zoning board and must not disturb decisions of local boards as long as honest judgment has been reasonably and fairly exercised after a full hearing." Molic v. Zoning Board of Appeals, 18 Conn. App. 159, 164, 556 A.2d 1049
(1989).
In deciding an appeal from the decision of a zoning board of appeals, the court must decide whether the board properly interpreted the applicable zoning regulations, and properly applied the regulations to the facts of the case. Danseyar v. Zoning Board of Appeals, 164 Conn. 325, 327, 321 A.2d 474 (1973). "On appeal, a reviewing court reviews the record of the administrative proceedings to determine whether the . . . board `has acted fairly or with proper motives or upon valid reasons."' Schwartz v. Planning and Zoning Commission, 208 Conn. 146, 152, 543 A.2d 1339 (1988).
The plaintiff raises three arguments in support of his appeal: The plaintiff first argues that the Board has given an insufficient reason for its decision. Second, the plaintiff argues that the types of maintenance performed at his property are accessory uses to the principal permitted use of boat storage. Third, the plaintiff argues that the record does not contain substantial evidence showing that the plaintiff was operating a commercial business on his property. CT Page 3534
I. REASONS FOR THE BOARD'S ACTION
In his appeal of the Board's decision to uphold the cease and desist order, the plaintiff first argues that the Board failed to state its reasons for upholding the order, in that the only reason give was that the "appeal was denied because insufficient hardship was proven and the cease and desist was upheld." (ROR #4). The plaintiff argues that this is not a reason for upholding the order, because hardship is only a reason for granting a variance, not a reason for denying a cease and desist order.
The plaintiff argues further that the General Statutes 8-7
requires that the Board state upon its records the reasons for its decision. In pertinent part, this statute states; "Whenever a zoning board of appeals . . . sustains or reverses . . . any order, requirement or decision appealed from, it shall state upon its records the reason for its decision . . ." However, this language is directory only. Corsino v. Grover, 148 Conn. 299, 310, 170 A.2d 267
(1961) (discussing the 8-3 requirement that zoning commissions give their reasons for changing zoning regulations.
"[W]hen a zoning authority has stated the reasons for its actions, the reviewing court ought to examine the assigned grounds to determine whether they are reasonably supported by the record and pertinent to the considerations the authority was required to apply pursuant to the zoning regulations." Beit Havurah v. Zoning Board of Appeals, 177 Conn. 440, 444-45, 418 A.2d 82 (1979); DeMaria v. Planning and Zoning Commission, 159 Conn. 5334, 540,271 A.2d 105 (1970).
"[W]here a zoning commission has formally stated the reasons for its decision the court should not go behind that official collective statement of the commission. It should not attempt to search out and speculate upon other reasons which might have influenced some or all of the members of the commission to reach the commission's final collective decision." DeMaria v. Planning and Zoning Commission, supra, 541.
More recently, however, in Stankiewicz v. Zoning Board of Appeals, 15 Conn. App. 729, 732, 546 A.2d 919 (1988), aff'd,211 Conn. 76, 556 A.2d 1024 (1989), the court held that "[i]f the board fails to give the reasons for its actions, or if its reasons are inadequate, the trial court must search the record to determine whether a basis exists for the action taken." Id.
In relevant part, General Statutes 8-6 states:
 The zoning board of appeals shall have the following powers and duties: (1) to hear and decide appeals where it is CT Page 3535 alleged that there is an error in any order, requirement, or decision made by the official charged with the enforcement of this chapter or any bylaw, ordinance, or regulation adopted under the provisions of this chapter;. . .(3) to determine and vary the application of the zoning bylaws, ordinances or regulations . . . where, owing to conditions especially affecting such parcel but not affecting generally the district in which it is situated, a literal enforcement of such bylaws, ordinances or regulations would result in exceptional difficulty or unusual hardship . . ." (Emphasis added).
It is found that the statute permits the Board to consider hardship where a variance from the zoning ordinance is sought; however, the statute does not state that hardship is to be considered for an appeal of a cease and desist order. Hence, the Board has not stated a pertinent reason for its decision. ; Therefore, pursuant to the holding of Stankiewicz v. Zoning Board of Appeals, supra, the court must search the record to determine whether a basis exists for the Board's action.
II.
The plaintiff's second argument is that the Board did not recognize that the types of maintenance performed at the plaintiff's site, commissioning and decommissioning boats, are accessory uses to the principal permitted use of boat storage. The plaintiff argues that he presented evidence which established that these forms of maintenance are accessory uses. The plaintiff argues that these forms of maintenance are accessory uses pursuant to the zoning regulations for Residence A Districts and pursuant to the terms of plaintiff's special permit.
Local zoning regulations provide the basis for determining whether a use is a permissible accessory use. Lawrence v. Zoning Board of Appeals, 158 Conn. 509, 510-11, 264 A.2d 552 (1969).
"While the necessity for permitting accessory uses must be admitted, the objectives of the comprehensive plan will be jeopardized if `accessory use' is so broadly construed as to allow incompatible uses to invade the district." Lawrence v. Zoning Board of Appeals, supra, 511.
"The following buildings, structures and uses are permitted: . . .Other buildings, structures, and uses not listed above, accessory to a permitted principal use. . ." (Emphasis added). Zoning Regulation 11-2.4.8.
Zoning Regulation 5-2 defines "accessory use": "A use of land, buildings of structures which is incidental and subordinate to and customarily used in connection with, and located on the same lot CT Page 3536 with the principal building, structure or use."
The Board did not address the issue of whether the commissioning and decommissioning of boats are accessory uses pursuant to the zoning regulations for the Residence A District. However, a search of the record provides support for the Board's decision to uphold the cease and desist order with respect to the accessory use issue. At the hearing before the Board, Kathy Barnard, Director of Planning and Zoning testified as follows:
 I also want to submit into the record some pictures that were taken of the activities that are taking place in this residential neighborhood, residentially zone property. I think that the pictures speak for themselves. We know about this one. It is May 21st, 1991. It talks about the construction of a boat trailer at 3 o'clock. Again, on May 21st, 1991, standing (sic) a boat . . . this was taken on a boat repair at 3 o'clock. In December of 1990 there are two pictures of what appears to be commercial equipment on the property. In addition, I would like to submit into the record some documents from the zoning enforcement file. The zoning inspector sheet dated 5/21/91 where he visited 471 Riverside Avenue to follow up on a complaint. It says sandblasting under side of boat, working on building a trailer for boat hauling, welding truck on property where building trailer. Then there are several telephone messages and zoning complaint forms talking about activities being observed by neighboring property owners of repair work going on the property.
(ROR #34, pp. 15-16, #7b).
In addition, the record contains a number of photographs which show boat maintenance and repair being conducted at the plaintiff's property; the photographs also show nearby residential properties. (ROR #'s 7a, 7b, 7c).
In light of the evidence in the record, it is the opinion of the court that the Board acted reasonably in upholding the cease and desist order in spite of arguments raised by the plaintiff at the Board hearing that the plaintiff's use of his property is an accessory use pursuant to the Residence A District zoning regulations.
The plaintiff also argues that the commissioning and decommissioning is an accessory use pursuant to his special permit. "The following uses are permitted subject to Special Permit . . .: CT Page 3537 Private, non-commercial boathouses, landings, and docks . . .Related accessory buildings, structures and uses." Zoning Regulations 11-2.2.10 and 11-2.2.13.
In the present case, the plaintiff concedes that his special permit was issued under the authority of Zoning Regulation 11-2.2.10. (Plaintiff's brief, p. 11). As noted above, the plaintiff's special permit included the express condition that no "boat or engine maintenance or repair shall occur on site." (ROR #9). In light of this express condition contained in plaintiff's special permit, it is found that a basis exists in the record for the conclusion that maintenance and repair are not accessory uses permitted under Zoning Regulation 11-2.2.13.
III.
The plaintiff's third argument is that the record does not contain substantial evidence showing that the plaintiff was operating a commercial business on his property. hence, the plaintiff argues, his appeal of the cease and desist order should have been sustained, since no evidence supported the decision of the Zoning Enforcement Officer that the plaintiff was operating a commercial business in violation of the special permit, which allows the operation of "a non-commercial boat club." (ROR #90.
The record provides a sufficient basis for a determination that the plaintiff operated a commercial business in violation of the special permit.
At the hearing before the Board, the plaintiff's attorney provided testimony regarding the definition of "commercial" from Webster's New Collegiate Dictionary:
"Commercial [is defined as] occupied or engaged in a commerce. And if you look at commerce, it says, `exchange or buying or selling in large quantities."'
(ROR #34, p. 9).
At the same hearing, Brian Bates testified that he owns Mobile Marine Services, a business which is located next to the plaintiff's property. Bates provided testimony on several aspects of the plaintiff's operation from which it could be concluded that the plaintiff's operation was commercial in nature: "[F]or a whole year American Mobile Yachts . . . leased space from [the plaintiff] and had his boat on the dock, whether he was a member or not. He was business [sic] working out of that facility." (ROR #34, pp. 28-29). "[A] commercial operation came in [to the plaintiff's property, and] subcontracted to do . . . work. it wasn't the customer himself and just built a terrific trailer [sic]. I went CT Page 3538 over and talked to the gentlemen who built it, who offered to build me one for $35,000. Talked about how he was going to build 5 of them. I mean it is kind of like a trailer building business going on there and a trailer sales business . . ." (ROR #34, p. 29).
The record also contains an advertisement for boat transport, dockage, hauling, and storage published in the May 17, 1991 edition of the Westport News, which lists the address of the plaintiff's property. (ROR #23). The record includes pictures of a sign which states "Dockage Storage Hauling Available," and lists a phone number. (ROR #7d). The record contains a letter from Wayland R. shook, Harbormaster addressed to the plaintiff, which states, in part; "[W]e discussed your bringing a 56' x 21' barge outfitted with a crane to sept masts for your six sail boat customers." (ROR #25). The record also contains a letter signed by the plaintiff. (ROR #24). The letterhead states "Dockage Repairs Commissioning Storage," and the letter states, in part" "The Summer Rate, which begins May 1st, is $70.00 a foot. . . .If you have any balances due, please remit them immediately."
It is the opinion of the court that the record provides a sufficient basis for the action taken by the Board. It is therefore found that, in light of the foregoing evidence in the record, the Board did not act illegally, arbitrarily or in abuse of its discretion in denying the plaintiff's appeal of cease and desist order.
CONCLUSION
For the above reasons, the plaintiff's appeal is dismissed.
RYAN, JUDGE